# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SCOTT A. CHAMBERS, et al.,** } | |
| } | |
| Plaintiffs, } | |
| } | |
| v. } | Case No.: 2:09-CV-2236-RDP |
| } | |
| **MERRILL LYNCH & CO., INC., et al.,** } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This case is before the court on Plaintiffs' Motion to Remand (Doc. #5), filed December 4, 2009. For the reasons that follow, Plaintiffs' Motion is due to be denied.

**I.    FACTUAL AND PROCEDURAL HISTORY**

On October 2, 2009, Plaintiffs Scott Chambers and John Burnette filed a class action complaint in the Circuit Court of Jefferson County, Alabama. (Doc. #1 at 72-73). Plaintiffs Chambers and Burnette, who both served as Financial Advisors at Defendant Merrill Lynch's Birmingham, Alabama office, allege state law claims against Defendants for breach of agreement and breach of fiduciary duty. (Doc. #1 at 73, 79-80). According to the allegations, these claims arose when Defendants unlawfully withheld deferred compensation funds from Financial Advisors. (Doc. #1 at 74-78). Specifically, Defendant Merrill Lynch established two compensation plans: (1) the "Merrill Lynch Growth Award Plan for Financial Advisors" ("GAP"); and (2) the "Financial Advisors Capital Accumulation Award Plan" ("FACAAP"). (Doc. #1 at 75-76).

Under the terms of the GAP, "eligible [Financial Advisors] received awards if performance criteria were met during applicable periods. The growth awards earned by [Financial Advisors] are vested and payable in the event of certain specified occurrences, such as death, retirement or a

change in control of Merrill Lynch." (Doc. #1 at 75). Regarding the change of control condition, Plaintiffs allege that plan participants are entitled to "an immediate cash distribution of the participant's entire account balance in the event there (i) is a 'Change of Control' of Merrill Lynch and (ii) the participant's employment is terminated by Merrill Lynch without cause or by the participant for 'Good Reason.'" (Doc. #1 at 75).

Similarly, under the FACAAP, "eligible participants were granted awards based upon their prior year's performance. Distribution of the awards earned by [Financial Advisors] (as well as contributions made by [them] into the account) are vested and payable in the event of certain specified occurrences, such as death, retirement or change in control of Merrill Lynch." (Doc. #1 at 76). Like the GAP, an immediate cash distribution is warranted if "there (i) is a 'Change in Control' of Merrill Lynch and (ii) the participant's employment is terminated by Merrill Lynch without cause or by the participant for 'Good Reason.'" (Doc. #1 at 76).

Plaintiffs Chambers and Burnette were eligible for and participated in the GAP and the FACAAP. (Doc. #1 at 77). According to the Complaint, when Bank of America purchased Merrill Lynch, the transaction triggered the "change in control" conditions under both the GAP and the FACAAP. (Doc. #1 at 77). Nevertheless, post-acquisition, Defendants eliminated the GAP and the FACAAP and made "significant detrimental [changes] in the amount and eligibility requirements necessary to earn production compensation." (Doc. #1 at 77). In light of these developments, Plaintiffs Chambers and Burnette resigned for purportedly "good reasons" as contemplated by the terms of the GAP and the FACAAP. (Doc. #1 at 77-78). Likewise, "thousands of other [Financial Advisors] have terminated their employment with Merrill Lynch for good reason." (Doc. #1 at 78). According to the Complaint, however, "Defendants have failed or refused to pay Plaintiffs and other

[Financial Advisors] amounts due under the terms of the deferred compensation plans." (Doc. #1 at 78).

Based on these facts, Plaintiffs, on behalf of themselves and all others similarly situated, assert four claims:

> Plaintiffs and all other[s] similarly situated who have left the employment of Defendants after the change in control, and who were not terminated for cause, are entitled to a cash distribution of their entire GAP account balance.  Defendants have breached the agreement and the terms of the plan by failing or refusing to distribute amounts due to Plaintiffs and other similarly situated persons.
> . . . .
> Plaintiffs and all other[s] similarly situated who have left the employment of Defendants after the change in control, and who were not terminated for cause, are entitled to a cash distribution of their entire FACAAP account balance.  Defendants have breached the agreement and the terms of the plan by failing or refusing to distribute amounts due to Plaintiffs and other similarly situated persons.
> . . . .
> Defendants owed Plaintiffs and all other[s] similarly situated fiduciary duties and responsibilities in connection with compensation plans as well as with the funds Plaintiffs and [Financial Advisors] had contributed to their accounts.  Due to a conflict of interest and for personal financial gain, Defendants and authorized decision-makers have breached their fiduciary duties by failing or refusing to make distributions due and owing to Plaintiffs and other similarly situated [Financial Advisors].
> . . . .
> There exists a justiciable controversy between Plaintiffs and Defendants as to the parties' rights, obligations and duties in connection with the GAP and the FACAAP.  Plaintiffs request the court take jurisdiction over the matter, and determine and declare that Plaintiffs and all similarly situated [Financial Advisors] are entitled to an immediate and full distribution of their deferred compensation accounts.  Plaintiffs further request such other equitable, declaratory, and injunctive relief be granted as may be necessary to compel such a distribution, including the establishment of a constructive trust, if necessary and appropriate.

(Doc. #1 at 80-81).

On October 8, 2009, Plaintiffs served Defendants with the Complaint. (Doc. #1 at 68). Within thirty days of service and unprompted by any additional pleadings or papers from Plaintiffs, Defendants filed their notice of removal. (Doc. #1). Defendants invoked both Class Action Fairness Act ("CAFA") jurisdiction, 28 U.S.C. § 1332(d), and traditional diversity jurisdiction, 28 U.S.C. § 1332(a). (Doc. #1 at 5-13). To substantiate the relevant amounts in controversy, Defendants attached to their notice of removal several pieces of evidence, including an affidavit from Margaret E. Nelson, who serves as First Vice President – Compensation/HR Counsel for Defendant Merrill Lynch & Co., Inc. (Doc. #1 at 18-21). The Nelson affidavit, which summarizes Defendants' records, concludes that the putative class action places more than $5,000,000 in controversy. (Doc. #1 at 21). In addition to the Nelson affidavit, Defendants included named Plaintiffs' GAP and FACAAP account summaries as of their respective resignation dates. (Doc. #1 at 59-66).

In response, on December 4, 2009, Plaintiffs filed the instant Motion to Remand. (Doc. #5). In their Motion, Plaintiffs argue that the amount in controversy is uncertain. (Doc. #5 at 2). Specifically, they contend that the evidence, supplied by Defendants and attached to their removal petition, should not be considered by the court when determining whether removal was proper. (Doc. #5 at 2-3). Plaintiffs have not argued that other removal requirements – either jurisdictional or procedural – are unsatisfied. The parties have fully briefed this matter, and the Motion is now properly under submission. (Docs. #6, 12).

**II.   DISCUSSION**

Plaintiffs' sole argument in favor of remanding this case relies on *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007). Plaintiffs contend that this case "should be remanded because Defendants rely exclusively upon documents they created, and within those documents they resort

4

to speculation. Further, the documents Defendants created to estimate damages do so from the Defendants' point of view, which is not allowed in the Eleventh Circuit." (Doc. #5 at 2). Plaintiffs clarify their concern: "Defendants rely upon an affidavit from a Merrill Lynch employee which purports to establish the amount of damages possible. Neither this document, nor the attached report, were received from Plaintiffs. Rather, they were created by Defendants and as such are an impermissible basis for removal." (Doc. #5 at 3). Plaintiffs, however, erroneously assume that *Lowery* addresses this removal petition.

Removal is governed by 28 U.S.C. § 1446(b), which contemplates two removal scenarios. Under the first – the so-called "paragraph one removal" – "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b). Under the second – the so-called "paragraph two removal" – "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." 28 U.S.C. § 1446(b). Between these two scenarios, the distinction turns on whether the defendant relies on the initial complaint or a subsequent litigation development as the basis for removal.

Unlike this case, *Lowery* evaluated a paragraph two removal. *Lowery*, 483 F.3d at 1213 n.63 ("In . . . the case before us, the defendant . . . need[s] an 'other paper' to provide the grounds for removal under the second paragraph of § 1446(b)."). This case, however, proceeded under the first paragraph of § 1446(b) insofar as Defendants, by acting within thirty days of service, alleged in their

5

removal petition that jurisdiction is proper based on the Complaint rather than "an amended pleading, motion or other paper." (Doc. #1). Plaintiffs, generally speaking, are correct that paragraph two removals necessitate that the "other paper" relied upon must be received only from the plaintiff before the defendant may invoke diversity jurisdiction. But critically, "*Lowery*'s 'receipt from the plaintiff' rule has no application to cases, like this one, which are removed under the first paragraph of § 1446(b)." *Pretka v. Kolter City Plaza II, Inc.*, No. 10-11471, 2010 U.S. App. LEXIS 11686, at *45 (11th Cir. June 8, 2010). Instead, in paragraph two removals, Defendants may "offer their own affidavits or other evidence to establish federal removal jurisdiction." *Id.* at *38; *see also id.* at *29 ("No court of appeals decision we could find holds that a defendant may not submit its own evidence in order to satisfy the jurisdictional requirements of removal, and we conclude that the defendant can."). Plaintiffs' single argument – that remand is proper because Defendants offered the only jurisdictional evidence before the court – is contrary to Eleventh Circuit precedent.

Thus, the sole issue is whether Defendants have identified (and have supported) a viable jurisdictional theory. Defendants first resort to CAFA as a basis for removal. (Doc. #1 at 7-13). Under CAFA, federal diversity jurisdiction over class actions exists if "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332(d)(2)(A). Here, the named Plaintiffs are both citizens of Alabama. (Doc. #1 at 73). Defendants are incorporated in Delaware and variously headquartered in New York and North Carolina. (Doc. #1 at 73-74). The minimal diversity element is satisfied (and uncontested by Plaintiffs); accordingly, the only issue is whether this putative class action places more than $5,000,000 in controversy.

To show that more than $5,000,000 is in controversy, Defendants offer an affidavit from Margaret E. Nelson, who serves as First Vice President – Compensation/HR Counsel for Defendant Merrill Lynch & Co., Inc. (Doc. #1 at 18-21). As stated above, the court may consider this evidence despite having been supplied by Defendants rather than Plaintiffs. *See Pretka*, No. 10-11471, 2010 U.S. App. LEXIS, at *38. According to Nelson, and based on her review of Defendants' records:

> . . . [A]s of December 31, 2008, the average amount of alleged "deferred compensation" relating to the GAP which had accumulated on the accounts of financial advisors who have terminated their employment with Merrill Lynch since January 1, 2009, and who have not waived their alleged "Good Reason" claims is approximately $16,000.
>
> . . . [A]s of December 31, 2008, the average amount of alleged "deferred compensation" relating to the FACAAP which had accumulated on the accounts of financial advisors who have terminated their employment with Merrill Lynch since January 1, 2009, and who have not waived their alleged "Good Reason" claims is approximately $36,000.
>
> . . . [A]s of December 31, 2008, the total amount of alleged "deferred compensation" relating to the GAP and the FACAAP which had accumulated on the accounts of financial advisors who have terminated their employment with Merrill Lynch since January 1, 2009, and who have not waived their alleged "Good Reason" claims is more than $5,000,000.00.

(Doc. #1 at 20-21). In light of Plaintiffs' allegation that there are "thousands" of affected former Financial Advisors, (*see* Doc. #1 at 78), the average sums substantiate Nelson's final conclusion that the putative class action places more than $5,000,000 in controversy. In fact, as Defendants observe based on these averages, "it would take a class of only 97 members to meet the $5,000,000 jurisdictional threshold." (Doc. #1 at 11).

As to the amount in controversy, Defendants must satisfy the familiar preponderance standard of proof. *See, e.g.*, *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002). In this context, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it. The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life." *Pretka*, No. 10-11471, 2010 U.S. App. LEXIS, at *24. Here, the evidence before the court, which corroborates the allegations contained in Defendants' removal petition, strongly suggests that, more likely than not, this putative class action meets the statutory threshold for CAFA jurisdiction.

In response, Plaintiffs have not questioned the veracity of Nelson's affidavit or Defendants' methodology.[1] Instead, they resort only to an overly broad reading of *Lowery* as an attempt to exclude Defendants' evidence from the court's consideration. Therefore, the court, based on the uncontroverted evidence before it, concludes that Defendants have satisfied their burden as to the amount in controversy requirement under CAFA.[2]

Finally, CAFA contains discretionary and mandatory carve-outs to federal jurisdiction. *See* 28 U.S.C. § 1332(d)(3) (discretionary exception); 28 U.S.C. § 1332(d)(4)(A) (mandatory "local

---

[1] Indeed, Plaintiffs' sole effort at questioning the evidence misses the mark. According to Plaintiffs, "Defendants' half-hearted contention that the aggregate claims for the putative class can be determined by taking the average amount of deferred compensation contained in the named Plaintiffs' accounts is again a futile exercise in speculation. While the named Plaintiffs do contend that their underlying substantive claims are typical and representatives of the substantive claims of members of the class, *Plaintiffs have no idea as to what amounts are at issue* in any other class member's account." (Doc. #12 at 7-8) (emphasis added).

First, Nelson's conclusion regarding fund averages was not based on Plaintiffs' respective accounts; rather, the stated values reflected the averages for "financial advisors who have terminated their employment with Merrill Lynch since January 1, 2009, and who have not waived their alleged 'Good Reason' claims." (Doc. #1 at 20-21). In short, the averages are the composite of *all* putative class members. Second, Plaintiffs' admission that they have no evidence of the class's aggregate value further reinforces this court's conclusion that the Nelson affidavit is indisputable evidence of the case's amount in controversy.

[2] Based on this conclusion, it is unnecessary for the court to decide whether this case satisfies traditional diversity jurisdictional requirements.

controversy" exception); 28 U.S.C. § 1332(d)(4)(B) (mandatory "home-state" exception).  As Defendants note, however, they "do not bear the burden of showing that CAFA's exceptions to jurisdiction . . . do not apply . . . ."  (Doc. #1 at 13).  According to the Ninth Circuit, "once federal jurisdiction has been established under [§ 1332(d)(2)], the objecting party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B)." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007); *see also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1165 (11th Cir. 2006) ("[W]e hold that the plaintiffs bear the burden of proving the local controversy exception to the jurisdiction otherwise established.").  Here, Plaintiffs have not asserted (and have not presented any proof) that any of the exceptions to jurisdiction are met; accordingly, the court has no occasion to express any opinion whatsoever as to their applicability.

### III.    CONCLUSION

For the reasons set forth, Plaintiffs' Motion to Remand is due to be denied.  A separate order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this     15th     day of June, 2010.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE