FILED

2010 Sep-03  AM 11:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **SCOTT A. CHAMBERS, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:09-CV-2236-RDP** |
| | } | |
| **MERRILL LYNCH & CO., INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This case is before the court on Defendants' Motion to Transfer Venue (Doc. # 11), filed January 19, 2010.  For the following reasons, the court concludes that the Motion is due to be granted.

## I.     STATEMENT OF FACTS[1]

Plaintiffs, Scott A. Chambers and John C. Burnette, were employed as Financial Advisors at Merrill Lynch, Pierce, Fenner & Smith's ("Merrill Lynch") Birmingham, Alabama office from October 4, 1993 to March 27, 2009 and from December 2, 2002 to March 13, 2009, respectively. (Doc. #1 at 73).  Merrill Lynch employs almost 17,000 persons nationwide as Financial Advisors who sell its products and services at offices located throughout the country, including Birmingham, Alabama.  (Doc. #1 at 73-74).

Merrill Lynch created two contingent long-term incentive or deferred compensation plans that are at issue in this case: the Merrill Lynch Growth Award Plan for Financial Advisors ("GAP"), and the Financial Advisor Capital Accumulation Award Plan ("FACAAP").  (Doc. #1 at 75-77).

---

[1]For a more complete "Statement of Facts," see this court's Memorandum Opinion and Order denying Plaintiffs' Motion to Remand.  (Docs. #13, 14).

During their employment, Plaintiffs and other Financial Advisors were eligible for, and participated in, deferred compensation plans established by Merrill Lynch, including the GAP and FACAAP ("Plans"). (Doc. #1 at 74-76).  Under the terms of the GAP, if specific performance criteria were met during applicable periods, eligible Financial Advisors received awards. (Doc. #1 at 74) "The growth awards earned by [Financial Advisors] [were] vested and payable in the event of certain specified occurrences, such as death, retirement or a change in control of Merrill Lynch." (Doc. #1 at 74). Similarly, under the FACAAP, the awards earned by Financial Advisors were vested and payable in the event of certain specified occurrences, such as death, retirement, or change in control of Merrill Lynch. (Doc. #1 at 76).  According to the terms of the Plans, each Financial Advisor was entitled to an immediate cash distribution of the participant's entire account balance of both the GAP and FACAAP in the event (1) there was a "change in control" of Merrill Lynch and (2) the participant's employment was terminated by Merrill Lynch, without cause, or by the participant for "Good Reason." (Doc. #1 at 74-76).

On January 1, 2009, Bank of America closed the acquisition of Merrill Lynch for approximately $50 billion in an all-stock transaction. (Doc. #1 at 74).  Plaintiffs allege that this acquisition constituted a change in control under the terms of the Plans, triggering both Plans' payout conditions. (Doc. #1 at 77).  According to the Complaint, the Financial Advisors' compensation and benefits plans were detrimentally changed in a number of ways, including, but not limited to: "(i) the elimination of the GAP; (ii) the elimination of the FACAAP; and (iii) significant detrimental changes in the amount and eligibility requirements necessary to earn production compensation." (Doc. #1 at 77).   According to the Complaint, based on these events, Plaintiffs, Chambers and Burnette, resigned for "good reason," as defined in the GAP and FACAPP, on or about March 27,

2

2009 and March 13, 2009, respectively, as did thousands of other Financial Advisors.  (Doc. #1 at 77-78).  Plaintiffs now allege state law claims against Defendant for breach of agreement and breach of fiduciary duty.  (Doc. #1 at 73, 79-80).

## II.     PROCEDURAL HISTORY

Plaintiffs filed this putative nationwide class action on or about October 2, 2009 in the Circuit Court of Jefferson County, Alabama.  (Doc. #1).  On November 4, 2009, Defendants timely removed the case to this court.  (Doc. # 1).  In response, on December 4, 2009, Plaintiffs filed a Motion to Remand.  (Doc. # 5).  Before this court ruled on Plaintiffs' Motion to Remand, Defendants filed the instant Motion to Transfer Venue (Doc. #11) to the Southern District of New York on January 19, 2010, and a Memorandum in Support of Defendant's Motion for Transfer of Venue (Doc. #8) on January 11, 2010.  This court denied Plaintiffs' Motion to Remand (Doc. # 5) on June 15, 2010.  In accordance with this court's Order, entered January 20, 2010, the parties briefed the issues raised by Defendants' Motion to Transfer.  (Doc. #11).  This Motion has been fully briefed and is now properly under submission.

## III.    DISCUSSION

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  In examining a motion under § 1404(a), the court must make a two-part determination when deciding whether transfer is appropriate.  *A.J. Taft Coal Co., Inc. v. Barnhart*, 291 F. Supp. 2d 1290, 1307 (N.D. Ala. 2003).  The court must first determine whether the action "might have been brought in the transferee court," and second, the court must evaluate whether the balance of factors under § 1404(a) weighs in favor of transferring the action to the transferee court.

*Id.* This court has broad discretion in determining whether transfer of venue under § 1404(a) is appropriate. *Id.* Section 1404(a) motions require "an individualized case-by-case consideration of convenience and fairness," which necessitates balancing case-specific factors. *Steward Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964)). The burden is on the moving party to establish the propriety of the transfer. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

Defendants claim that a substantial portion of the events that are the basis of this action occurred within the Southern District of New York and that the section 1404(a) factors and the interest of justice weigh in favor of transferring this action there. (Doc # 8 at 1). Plaintiffs argue that Defendants have not met their burden of establishing a substantial portion of events forming the basis of the litigation occurred in New York or, alternatively, that the convenience of the parties and witnesses or the interest of justice does not favor transfer. (Doc. #15 at 1).

## A.  Venue is Proper in the Southern District of New York

When evaluating a §1404(a) motion, the court, first, must determine whether venue would be proper in the transferee court. *A.J. Taft Coal Co., Inc.,* 291 F. Supp. 2d at 1307. Venue is in fact proper in the Southern District of New York. Although Plaintiffs are residents of Alabama, (Doc. #1), they acknowledge that diversity jurisdiction exists in the Southern District of New York, because one of the Defendants, Merrill Lynch, has its principal office there. (Doc. #15 at 4). Defendants Merrill Lynch and Merrill Lynch & Co. additionally maintain their principal places of business in the Southern District of New York. (Doc. #8 at 8). Defendants Merrill Lynch & Co. and Bank of America have registered as foreign entities in New York and have agents in New York for

service of process.   (Doc. #8 at 8).   Accordingly, Defendants are properly subject to personal jurisdiction in New York.

This case does not present a federal question; rather, the basis for federal jurisdiction is based upon diversity jurisdiction under CAFA.  (Doc. #13 at 8).  In a diversity case, venue is proper in a judicial district where any defendant resides, if all defendants reside in the same state or where "a substantial part of the events or omissions giving rise to the claim" took place.  28 U.S.C. § 1391(a). According to the allegations of their Complaint, (1) Plaintiffs have been denied benefits to which they are entitled under the Plans, (2) Defendant has engaged in bad faith and has breached the terms of the Plans, and (3) Defendants have breached their fiduciary duties in administering the Plans and in determining whether Plaintiffs and other former Financial Advisor are entitled to distributions under the terms of the Plans.  (Doc. #1).  Thus, venue is proper in the Southern District of New York because a substantial portion of the events giving rise to Plaintiffs' claims occurred there.

Both the GAP and FACAAP were administered by current and former employees of Defendant Merrill Lynch, who were working out of offices located, in addition to New Jersey, in New York and, more specifically, within the Southern District of New York.  (Doc. #8-1 at 4-5). Those with "decision-making authority" regarding the Plans are located in the proposed transferee forum.  These employees set the relevant policies relating to the Plans and made determinations regarding "whether a participant in the GAP and/or the FACAAP was entitled to any monetary payments under the terms of the Plans upon the termination of the participant's employment." (Doc. #8-1 at 4-5).  These events have a significant connection to "where, how and by whom the compensation program was altered after the change of control" and where the actual decision to deny

benefits was made.  (Doc. #15 at 5).  Venue, therefore, would have been proper if this case initially had been filed in the Southern District of New York.

**B.      The Balance of Factors Weigh in Favor of Transferring Venue to the Southern District of New York**

Having addressed the threshold question and finding that this case could have been filed in the Southern District of New York, the court must consider the second step in the transfer inquiry – whether the balance of factors weighs in favor of transferring venue.  *A.J. Taft Coal Co., Inc.*, 291 F. Supp. 2d at 1307.  The Eleventh Circuit has identified nine factors relevant to a *forum non conveniens* change of venue inquiry:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.2d 1132, 1135 n.1 (11th Cir. 2005) (citing *Gibbs & Hill Inc. v. Harbert Int'l, Inc.*, 745 F. Supp. 993, 996 (S.D.N.Y. 1990)).  Although the decision to transfer is within the court's discretion, *Norwell v. Dick*, 413 F.2d 1204, 1212 (5th Cir. 1969), a "plaintiff's choice of forum should not be disturbed unless the defendant shows that it is *clearly* outweighed by these considerations." *Demere v.  Newlin*, No. 405-91, 2005 U.S. Dist. LEXIS 46555, at *16 (S.D. Ga. Aug. 30, 2005) (citing *Robinson v. Giamarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir. 1996)) (emphasis added).  The court concludes that six of these nine factors – one, two, four, five, seven, and nine – strongly weigh in favor of transferring this action to the Southern District of New York.

### 1.        Convenience of the Witnesses

"It is often said that 'the most important factor in passing on a motion to transfer under §

1404(a) is the convenience of the witnesses." *Harper v. Am. Airlines, Inc.*, No. 08-2410, 2009 WL

1605800, at *5 (N.D. Ala May 18, 2009) (quoting *Hutchens v. Bill Heard Chevrolet Co.,* 928 F.

Supp. 1089, 1091 (M.D. Ala. 1996)); *see also Goldsby v. Ash*, No. 09-975,  2010 WL 1658703, at

*5 (M.D. Ala. 2010) (quoting *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1359 (M.D. Ala

1998)).  Because key witnesses, who would not be subject to this court's subpoena power, reside in

or around the Southern District of New York, this factor weighs in favor of transferring the case

there.

Plaintiffs identified twenty individuals by name who currently or formerly resided in the

Northern District of Alabama.  Plaintiffs claim these individuals are potential material fact witnesses

who have direct knowledge of meetings, information regarding the Plans, knowledge of the impact

of the merger, and what compensation and benefit plans would be available, as well as knowledge

of individual meetings between managers and Financial Advisors in Birmingham concerning change

of control and compensation plan issues.  (Doc. #15-2 at 5).  However, "[w]hen weighing the

convenience of the witnesses a court does not merely tally the number of witnesses who reside in

the current forum in comparison to the number located in the proposed transferee forum.  Instead,

the court must qualitatively evaluate the materiality of the testimony that the witness may provide."

*Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877, 2009 WL 455432, at * 3 (S.D. Fla. Feb. 23,

2009) (quoting *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y.

2006)).  "The analysis of the convenience of the witnesses does not boil down to which party

produces the longer list of witnesses that will be inconvenienced by a particular forum.  Rather, in

addition to the weight accorded non-party witnesses, the Court's focus is on those witnesses which will be key to conducting the trial." *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga 2004) (citing *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1311 (M.D. Ga. 2003)).

Accordingly, in determining convenience, the question is who are the "key witnesses" (*i.e.*, those who have information regarding the liability of the defendant). *Ramsey*, 323 F. Supp. 2d at 1356 (citing *Matt v. Baxter Healthcare Group*, 74 F. Supp. 2d 467, 470 (E.D. Pa. 1999)). In this regard, Plaintiffs have not identified any "key witnesses" located in the Northern District of Alabama. While Plaintiffs have identified specific individuals purportedly in possession of relevant information, as Defendants argue, these individuals could testify only to general matters rather than the underlying merits of this case. Moreover, Plaintiffs have not shown that the designated witnesses are necessary to testify about facts other than those of which it appears Plaintiffs already have knowledge. And as parties are presumed to be more willing to testify than non-party witnesses, *Ramsey*, 323 F. Supp. 2d at 1356, the court must presume that Plaintiffs are more willing to testify than those Merrill Lynch employees, or former employees, located in the Northern District of Alabama. Plaintiffs have not shown that the supposed witnesses would contribute any testimony beyond that which Plaintiffs could offer.

Defendants, on the other hand, have identified liability witnesses, who are properly categorized as "key witnesses." *See Ramsey*, 323 F. Supp. 2d at 1356. Current and former employees of Merrill Lynch are located in the Southern District of New York. Specifically, those witnesses with decision- making authority worked in offices located in the Southern District of New York. (Doc. #8 at 11). These employees determined whether participants of the Plans were eligible for distributions. (Doc. #8 at 11). The Plans were "administered by current and former employees

8

in offices located in New York City, within the Southern District of New York, and Hopewell, New Jersey . . . ."  (Doc. #8 at 11).  Therefore, Defendants intend to call these witnesses to testify, *inter alia*, as to "the terms of the Plans, Defendant's interpretations of the terms of the Plans, and the reasons why Plaintiffs did not receive payments under the Plans."  (Doc. # 8 at 11).

Although Defendants have not specifically named these supposed witnesses, their failure is not dispositive.  *See Johnston v. Foster Wheeler Constructors, Inc.,* 158 F.R.D. 496 (M.D. Ala. 1994) (concluding that transfer of venue was appropriate – notwithstanding the defendant having failed to name any specific witnesses who resided in Florida – because relevant supervisory personnel worked and continued to reside in the Southern District of Florida).  Because these key witnesses reside in New York and Hopewell, New Jersey, the convenience of these witnesses still weighs strongly in favor of transfer.  *See, e.g.*, *Gould*, 990 F. Supp. at 1359 (holding that transfer was appropriate because (1) key officers were located in the transferee venue, (2) many retired employees resided in the transferee venue, and (3) the Middle District of Alabama was unable to compel these witnesses to testify); *Barnett v. Alabama*, 171 F. Supp. 2d 1292 (S.D. Ala. 2001) (holding transfer to the Middle District of Alabama was appropriate because the State Legislature – the government entity at issue – was located in the Middle District and, therefore, a majority of witnesses were located in the transferee venue).

2.      **The Location fo Relevant Documents**

The location of relevant documents and the relative ease of access to sources of proof is a factor that also weighs in favor of transferring venue to the Southern District of New York.  Plaintiffs have failed to identify with specificity any documents that are located in the Northern District of Alabama and relevant to this case.  Defendants, on the other hand, have pointed out that all

documents and records relating to Plaintiffs' claims are retained primarily in Merrill Lynch's offices in and around the Southern District of New York and that, if this case remains here, it would be unnecessarily expensive to transport or copy these documents.  The court finds this factor to weigh in favor of transfer.  *See Harper,* No. 08-2410, 2009 WL 1605800, at *4 ("[T]he fact that documents and records related to [the plaintiff's claims] are retained primarily at defendant's headquarters in [the transferee district] favors transfer."); *see also Irwin v. Zila,* 168 F. Supp. 2d 1294 (M.D. Ala. 2001) (holding that the transportation or copying of 80,000 pages of documents posed a considerable burden that weighed in favor of transfer); *Gould*, 990 F. Supp. at 1359 (transferring venue because, *inter alia*, almost a million documents were housed in the transferee venue and it would be difficult and costly to copy these documents or to transfer them to Alabama).

### 3.    The Convenience of the Parties

Moreover, the convenience of the parties does not tip the scale in favor of this case remaining in the Northern District of Alabama.  At most, the parties have fought to a draw in their arguments regarding this factor.  Obviously, Defendants are located in and around New York, and Plaintiffs reside and worked in this district.  (Doc. #15 at 5).  Plaintiffs have conducted no business in New York, have never been to New York for business, and have no offices, employees, or agents in New York.  (Doc. #15 at 6).  Plaintiffs have never been involved in litigation in New York.  (Doc. #15 at 6).  However, in this case they seek to represent a nationwide class, eight percent of which reside in New York.  (Doc. #1 at 78, ¶ 19).  Defendants do conduct business in Alabama and are involved in other lawsuits pending in Alabama courts.  (Doc. #15 at 6).  Neither party's counsel is located in New York.  (Doc. #15 at 6).  Although transfer should not merely shift convenience, *Mason v. Smithkline Beecham Clinical Laboratories*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla 2001) ("Where

10

a transfer merely shifts the inconvenience from one party to another, plaintiff's choice of forum should remain.") (internal citations omitted), in this case, Plaintiffs have not shown that litigating in the Southern District of New York would be prohibitive or any less convenient than Defendants litigating here.  Accordingly, the court finds that this factor, at best, favors transfer and, at worst, is neutral.

### 4.     The Locus of Operative Facts

The fourth factor requires the court to consider where the locus of operative facts is centered. "Where the operative facts underlying the causes of actions transpired is a consideration for convenience." *A.J. Taft Coal Co., Inc*, 291 F. Supp. 2d at 1311 (citing *Johnston.,* 158 F.R.D. at 504). The court recognizes that some precipitating events involving the putative class representatives' individual claims did occur in the Northern District of Alabama.  Plaintiffs earned the deferred compensation awards in the Birmingham office, which is located in the Northern District of Alabama.  The higher concentration and frequency of significant events, however, occurred in the Southern District of New York, and this weighs in favor of transfer.  Plaintiffs' Complaint revolves around the failure of Merrill Lynch to execute the Plans' deferred compensation features.  These Plans were administered and decisions were made by individuals located in New York, within the Southern District of New York, and Hopewell, New Jersey.  (Doc. #8-1 at 4).  These employees, located in New York City, set all policies relating to the Plans and made all determinations regarding a participant's entitlement to monetary payments.  (Doc. #8-1 at 4-5).  The actual decision of who would receive benefits, as well as all decisions regarding the plans, occurred in New York. *See A.J. Taft Coal Co.,* 291 F. Supp. 2d at 1311  (concluding that transfer was appropriate because, *inter alia*, "the operative decision giving rise to this lawsuit occurred in the" transferee forum); *Gould*, 990 F.

11

Supp. at 1354 (holding that any pattern of fraud would have been devised in the state where the defendant's home office and employees were located).

**5.      The Availability of Process to Compel the Attendance of Unwilling Witnesses**

Additionally, this court must consider the availability of process to compel the attendance of unwilling witnesses.  This factor clearly weighs in favor of transferring venue.  Certain witnesses who work in either New York or New Jersey made decisions regarding who would receive benefits under the Plan, and the testimony of those persons is likely material to both liability and damages. This court would be unable to compel these witnesses to testify because they are outside of this court's subpoena power, as specified by Federal Rule of Civil Procedure 45.[2]  The Southern District of New York, on the other hand, may compel these witnesses to appear and testify.

**6.      The Relative Means of the Parties**

The relative means of the parties is also relevant.  Defendants are large companies, and Plaintiffs are individuals. If a "disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Bearman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998).  Defendants are companies with substantial resources and are engaged in numerous litigation activities in the Northern District of Alabama.[3]

---

[2]Rule 45 states in relevant part: "A subpoena may be served at any place: (A) within the district of the issuing court; (B) outside the district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection; (C) within the state of the issuing court if a state statute or court rule allows service at that place of a subpoena issued by a state court of general jurisdiction sitting in the place specified for the deposition, hearing, trial, production, or inspection; or (D) that the court authorizes on motion and for good cause, if a federal statute so provide."

[3]Defendants are engaged in over 400 cases in Alabama, either as plaintiffs or defendants. (Doc. #15-3 Ex. B).

The thrust of Plaintiffs' argument here is that because Defendants are large companies, it necessarily follows that this case should remain here. But if this were the approach the courts were to take, venue would never be transferred when a large company was requesting transfer from the forum chosen by an individual plaintiff. In this Circuit, courts have granted a defendant's motion to transfer in cases where the defendant was a large corporation and the plaintiff was an individual with limited resources, provided that the other relevant factors demonstrate that a section 1404(a) transfer would be appropriate. *See, e.g.*, *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648 (11th Cir. 1993); *Wamstad v. Haley Constr., Inc.,* No. 09-0209, 2009 WL 1855841 (S.D. Ala. June 29, 2009); *Harper*, No. 08-2410, 2009 WL 1605800, at *6.[4]

The proper analysis is whether Plaintiffs can show that a transfer of venue to the Southern District of New York would create an *undue* burden on their finances. Plaintiffs allege only that litigation in New York would be more costly than litigating in Alabama. Therefore, if this factor is not neutral, at best it tips slightly in favor of Plaintiffs but does not win the day for them. This is because (1) the court finds that the other factors strongly weigh in favor of transfer and (2) Plaintiffs have not demonstrated that the additional litigation expenses are unnecessarily prohibitive. *See Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362 (S.D.N.Y. 2009) (finding the parties' relative

---

[4]The court is aware that some courts outside of the Eleventh Circuit have considered the size of a large corporate defendant versus an individual plaintiff in determining whether transfer is appropriate and at times have found that the size of a corporation can tip the balance in favor of transfer. *See, e.g.*, *Promuto v. Waste Management*, 44 F. Supp. 628 (S.D.N.Y. 1999) (finding the large corporation to be better equipped to absorb the burden of transfer); *Nelson v. Master Lese Corp.*, 759 F. Supp. 1397, 1401 (D. Minn. 1991) (a corporation with large operations across the United States had a stronger ability to protect its interest). In any event, the Eleventh Circuit and this court's sister districts have not endorsed that approach, and in this case Plaintiffs are seeking to represent a nationwide class, eight percent of whom are from New York.

finances to be a neutral factor because there was nothing indicating that litigating the case in a certain forum would impose undue hardship on the plaintiff).

### 7.    A Forum's Familiarity with the Governing Law

Familiarity with governing law is an important consideration that weighs in favor of transfer. Plaintiffs' claims turn on what they allege are violations of the GAP and FACAAP, and consequent breaches of fiduciary duty.   Both the GAP and FACAAP include New York choice of law provisions, which explicitly contemplate application of New York substantive law.  (Doc. #8-1 at 5).  Although this court is capable of interpreting and applying New York law, the Southern District of New York is undoubtedly better suited for the task.  *See Wamstad*, No. 09-209, 2009 WL 1855841, at *3; *Conseal Int'l. Inc. v. Econalytic Systems, Inc.*, No. 09-60477, 2009 WL 1285865, at *4 (S.D. Fla. May 8, 2009) ("Colorado district courts are surely more familiar with Colorado contract law than are Florida district courts"); *see also Harris v. Lawson*, No. 09-70, 2008 WL 4003999, at * 4 (M.D. Ga. Aug. 27, 2008) (finding a Georgia federal court would be more familiar with Georgia law than a Florida federal court).  The seventh factor, therefore, weighs in favor of transfer.

### 8.    The Weight to be Accorded to Plaintiff's Choice of Forum

Generally, a plaintiff's strongest argument against transfer is the deference to be accorded to his choice of venue,[5] but here this factor does not tip the balance in favor of remaining in the Northern District of Alabama. "[T]he deference given to the plaintiff's choice of forum is *substantially lessened* when the plaintiff brings claims on behalf of a putative class." *Harper,* No.

---

[5]"The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson*, 74 F.3d at 260 (citations omitted).

08-2410, 2009 WL 1605800, at *3 (emphasis added); *see also Ellis v. Whirlpool Corp.,* No. 07-0679,

2007 WL 4706908, at * 1 (N.D. Ala. Nov. 27, 2007) ("[A] plaintiff's choice of forum, though usually

accorded deference, is not a significant factor when the case is prosecuted as a class action.") (citing

*Koster v. Lumber Mens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)); *Barnett*, 171 F. Supp. 2d at 1295

("Although a plaintiff's choice of forum generally should not be lightly disturbed, the weight

accorded to [plaintiff's] choice of forum is considerably reduced by virtue of the fact that he brought

his challenge as a class action."); *Gould,* 990 F. Supp. at 1358 (A "[p]laintiff's chosen forum, which

is usually entitled to great deference, is entitled to less in those cases" filed as nationwide class

actions).  Indeed, the Supreme Court has recognized that:

> where there are hundreds of potential plaintiffs, all equally entitled
> voluntarily to invest themselves with the corporation's cause of action
> and all of whom could with equal show of right go into their many
> home courts, the claim of any one plaintiff that a forum is appropriate
> merely because it is his home forum is considerably weakened.

*Koster,* 330 U.S. at 524.  "Even if the chosen forum is entitled to less deference, the court must still

find that other factors clearly outweigh the chosen forum." *Gould*, 990 F. Supp. at 1354.

Plaintiffs purport to bring this action on behalf of themselves and a nationwide class.

Because Plaintiffs have opted to bring this suit on behalf of a class rather than merely as individuals,

their choice of forum is given substantially less weight.  In this regard, and considering the

composition of the putative class, two percent of the possible class members reside in the Northern

District of Alabama, and eight percent reside in New York.  In other words, four times the number

of plaintiffs in the class reside in New York than in Alabama.  More saliently, as these figures

indicate, a vast number of putative class members reside outside of Alabama, in general, and the

Northern District of Alabama, in particular.  Thus, this eighth factor does not tip the balance in

Plaintiffs' favor because: (1) 98% of the putative class members reside outside of Alabama; (2) four times the number of Alabama putative class members reside in New York; and (3) the other section 1404(a) factors clearly weigh in favor of transfer.

       **9.**       **Trial Efficiency and the Interest of Justice**

Finally, the court must examine trial efficiency and the interest of justice, based on the totality of the circumstances, in determining whether transfer is appropriate. *Manual*, 430 F.3d at 1135 n.1. The preeminent considerations include the importance of "having localized controversies decided at home, the desire to avoid imposing jury duty upon the people of a community which has no relation to the litigation, and the administrative convenience of having the trial of a diversity case in a forum that is at home with the state law that must govern." *Harper*, No. 08-2410, 2009 WL 1605800, at *6 (citing *Gulf Oil*, 330 U.S. at 509; *Roofing & Sheet Metal Serv., Inc. v. La Quinta Motor Inns*, 689 F.2d 982, 991 (11th Cir. 1982); *Koehring v. Hyde Const. Co.*, 324 F.2d 295, 296 (5th Cir. 1964)).

The convenience of having the trial of a diversity case in a forum that coincides with the governing substantive law weighs in favor of transferring venue to New York. As discussed above, the Southern District of New York is more familiar with New York state law than this court. Additionally, as previously detailed, there is a significant nexus between the predicate activities in the Southern District of New York and Plaintiffs' causes of action. Finally, Merrill Lynch has its principal place of business in New York City, and four-times the number of employees with possible claims live in New York than in this District. Therefore, the Southern District of New York has a more compelling interest in this case than the Northern District of Alabama.

Accordingly, the court finds that the convenience of the witnesses, the location of relevant documents and relative ease of access to sources of proof, the locus of operative facts, the availability of process to compel the attendance of unwilling witnesses, the forum's familiarity with governing law, trial efficiency, and the interest of justice all weigh strongly in favor of transferring venue to the Southern District of New York.  Moreover, the court further finds that the usual deference accorded to a plaintiff's choice of forum, although substantially lessened here because Plaintiffs are prosecuting this case as a putative nationwide class action, is clearly outweighed by the host of factors favoring transfer.

## IV.   CONCLUSION

For the reasons outlined above, Defendants' Motion to Transfer is due to be granted.  An order consistent with this Memorandum Opinion will be entered separately.

**DONE** and **ORDERED** this ____3rd____ day of September, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

17